**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

————————————————

MUNICIPALITY OF MARIANA, *ET AL*.

      Claimant-Applicants.

                                1:23-mc-00033-KWR

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon Respondent Marcus Randolph's Motion to Quash Subpoenas issued pursuant to Applicants' *Ex Parte* Application for an Order Under 28 U.S.C. § 1782.  Doc. 15.  Having reviewed the party's pleadings and applicable law, the Court finds Respondent's motion is not well taken and is therefore, **DENIED**.

## BACKGROUND

Applicants, claimants in *Municipio de Mariana and Others v. BHP Group (UK Ltd. and BHP Group Limited)* before the English High Court of Justice, filed an *ex parte* application for an order under 28 U.S.C. § 1782 to take discovery from Marcus Randolph, a resident of Santa Fe, New Mexico.  Doc. 1-1 at 1.  Claimants in this English litigation case consist of roughly 700,000 individuals, businesses, municipalities, members of indigenous groups, religious organizations, and utility companies seeking compensation from English Defendants for losses and damages arising from the 2015 collapse of the Fundao Dam in Brazil.  *Id*. at 2, 4.  Claimants seek to hold English Defendants liable as indirect polluters under Article Three of Brazilian environmental law, fault-based liability under Article 186 of the Brazilian Civil Code, and liable as controlling shareholders as defined in Article 116 of Brazilian corporate law.  *Id*.  To establish these claims, Claimants seek discovery of evidence related to Defendants' supervision, management, funding,

control of, and profits generated from the Brazilian-English joint venture behind the Fundao Dam, Samarco Mineracao SA ("Samarco"), and BHP's knowledge of the risks posed by the dam. *Id*. Marcus Randolph, then-Chief Executive of BHP's Ferrous and Coal Customer Sector Group, was a member of the BHP Group Management Committee, the most senior executive body of BHP, focusing on leadership and strategic advice to the BHP Group and its CEO from 2007 to 2013. *Id*. at 2-3. Marcus Randolph served on Samarco's board of directors from 2007 to 2013 as a member, chairman, and vice chairman. *Id*. As a result of these positions, Claimants allege Mr. Randolph can provide testimonial and documentary evidence related to BHP's executive level policies, decisions, and internal discussions regarding supervision, management, funding, control of, and profits generated from Samarco; Samarco's corporate structure and governance; BHP's involvement in and understanding of the Fundao Dam; and decisions authorized or recommended by the Samarco board of directors related to the Fundao Dam. *Id*. at 3-4.

This Court granted Claimants' *ex parte* application, who then served Respondent with subpoenas for production of documents and deposition testimony on January 30, 2024. Doc. 4. Respondent now seeks to quash the subpoenas, arguing they are at odds with § 1782's express prohibition against compelling testimony in violation of a legally applicable privilege. Doc. 15 at 3.

## LEGAL STANDARD

28 U.S.C. § 1782(a) states:

The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person

2

appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

For an international proceeding discovery request, an applicant must satisfy three requirements: (1) that the applicant is an "interested person;" (2) that the discovery is to be used in a proceeding in a foreign or international tribunal; and (3) the target of discovery is a person who resides or may be found in the district. *In re Ex Parte Application Under 28 U.S.C. § 1782 to Take Discovery from Americo Fialdini Junior*, No. 21-MC-0007-WJM-NYW, 2021 WL 253455, * 2 (D. Colo. Jan. 26, 2021) citing, *In re Perez Pallares*, Civil Action No. 10-cv-2528-PAB, 2010 WL 4193072, at *1 (D. Colo. Oct. 2010).

While meeting these requirements is necessary for discovery, a court retains discretion to determine if such discovery is proper. *Id*. citing, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260 (2004). Under *Intel*, courts must consider, "(1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach; (2) the nature of the foreign tribunal and character of the proceedings underway abroad; (3) the receptivity of the foreign government or the court or agency abroad to federal court assistance; (4) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country; and (5) whether the request contains unduly intrusive or burdensome requests." *In re Ex Parte Application Under 28 U.S.C. § 1782 to Take Discovery from Americo Fialdini Junior*, No. 21-MC-0007-WJM-NYW, 2021 WL 253455, * 2 citing, *Id*.

However, a district court must be assured that it has jurisdiction over a petition, and once jurisdiction is established, only then may grant discovery under § 1782 in its discretion. *In re Application of Johannes Roessner to Take Discovery Pursuant to 28 U.S.C. 1782 in Aid of Foreign Litigants or Proc.*, No. 21-MC-513 (RA) (OTW), 2021 WL 5042861 * 1 (S.D.N.Y. Oct. 29, 2021) citing, *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015))*; In re Top Matrix Holdings Ltd.*, No. 18-mc-465 (ER), 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020). Ordinarily, federal courts follow state law in determining jurisdiction over persons. *In re Ex Parte Application Under 28 U.S.C. § 1782 to Take Discovery from Americo Fialdini Junior*, No. 21-MC-0007-WJM-NYW, 2021 WL 253455 * 3 citing, *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014).

The Fifth Amendment provides, "[n]o person…shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The Fifth Amendment's protections apply to all persons within the territories of the United States, including aliens. *Harisiades v. Shaughnessy*, 342 U.S. 580, 586 n.9, 72 S.Ct. 512, 96 L.Ed. 586 (1952) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896)). Fifth Amendment privilege against self-incrimination can be invoked in the court of any civil or criminal proceeding and interpreted "to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *Kastigar*, 406 U.S. at 444; *Maness v. Meyers*, 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). Privilege protects witnesses from compelled disclosure, "not merely…[of] evidence which may lead to criminal conviction [and] information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal

prosecution." *Baumer v. Schmidt*, 423 F. Supp. 3d 393 (E.D. Mich. 2019) citing, *Maness*, 419 U.S. at 461 citing, *Hoffman*, 341 U.S. at 486.

## DISCUSSION

Respondent asks this Court to exercise its wide discretion under § 1782 to quash the subpoenas served by Claimants on Mr. Randolph for production of documents and deposition testimony. If the Court denies Respondent's Motion outright, Respondent asks this Court to (1) order Claimants to substantially narrow its requests, which currently seek privileged information and are duplicative of disclosure requests in the English litigation and therefore, unduly burdensome. Doc. 15 at 4. Respondent further asks this Court to (2) issue a broad protective order to the fullest extent permitted by English and American law to limit Claimants' ability to misuse Mr. Randolph's testimony or publicly reveal its content. *Id*. This Court disagrees with Respondent's assertion that the subpoenas at issue should be quashed.

**I.      Claimants' Subpoenas Are Not Unduly Burdensome and Comply with *Intel***

First and foremost, Mr. Randolph does not dispute that the three statutory requirements under 28 U.S.C. § 1782 are satisfied. Doc. 15 at 11. Rather, Mr. Randolph argues the *Intel* factors weigh in favor of quashing Claimants' subpoenas. *Id*. at 12. Under *Intel*, courts must consider, "(1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach; (2) the nature of the foreign tribunal and character of the proceedings underway abroad; (3) the receptivity of the foreign government or the court or agency abroad to federal court assistance; (4) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country; and (5) whether the request contains unduly intrusive or burdensome requests." *In re Ex Parte Application Under 28 U.S.C. § 1782 to Take Discovery from Americo Fialdini Junior*, No. 21-MC-0007-WJM-NYW, 2021 WL 253455, * 2 citing, *Intel*

*Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260 (2004).  However, the crux of Mr. Randolph's argument behind his motion is that Claimants' discovery requests are unduly burdensome and intrusive.  Doc. 15 at 12-13.  Mr. Randolph argues that forcing him to comply with the discovery requests would violate his right against self-incrimination and § 1782's prohibition against compelling discovery in violation of an applicable privilege.  *Id.*  Mr. Randolph asserts that the United States, the United Kingdom, and Brazil each have privileges against self-incrimination and having previously faced criminal prosecution in Brazil, he might be vulnerable to new charges if compelled to comply with the subpoenas.  Doc. 15 at 15-16.

As to Mr. Randolph's argument that the privilege against self-incrimination applies here under § 1782, this Court finds at this stage, it cannot accept Respondent's blanket assertion of privilege.  "A person may assert privilege not only when production of an answer or document could support a conviction but also when it would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."  *Hoffman*, 341 U.S. at 486.  Privilege "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer."  *Id.*  "A witness's 'sincere belief that his answers may be incriminating, without more, 'is not enough to foreclose his answering or making a disclosure."  *SEC v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017).  Here, Respondent has in effect, offered a blanket assertion of privilege.  Respondent has not argued that his privilege against self-incrimination applies to specific documents or specific deposition questions.  Rather, Mr. Randolph seeks a wholesale assertion of privilege against Claimants' discovery requests.  Asserting a Fifth Amendment right based on a blanket claim of privilege is impermissible.  *In re Gorsoan Ltd.*, 435 F. Supp. 3d 589, 606 (S.D.N.Y. 2020), rev'd and remanded sub nom. *In re Gorsoan Ltd. for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 843 F. App'x 352 (2d Cir.

2021) citing, United States v. Clark, 574 F. Supp. 2d 262, 267 (D. Conn. 2008); *United States v. Cianciulli*, No. M–18–304, 2001 WL 1097919, at *3 (S.D.N.Y. Sept. 19, 2001); *United States v. Argomaniz*, 925 F.2d 1349, 1353 n. 8 (11th Cir.1991); *United States v. Schmidt*, 816 F.2d 1477, 1482 (10th Cir.1987); *Rogers v. United States*, 340 U.S. 367, 374, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *Borgeson v. United States*, 757 F.2d 1071, 1073 (10th Cir.1985); *United States v. Clark*, 847 F.2d 1467 (10th Cir. 1988) citing, *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir.1974); *United States v. G & G Advertising Company*, 762 F.2d 632, 635 (8th Cir.1985).  "A court should not accept a defendant's 'blanket assertion of a fifth amendment privilege,' and must instead 'undertake a particularized inquiry to determine whether the assertion was founded on a reasonable fear of prosecution."  *Pence*, 323 F.R.D. at 188.  Furthermore, a "witness…must endeavor to explain how his answer will be incriminatory."  *Edgerton*, 734 F.3d at 919.

Here, Mr. Randolph's fear of incrimination in Brazil remains "remote or speculative," especially since the criminal charges he faced in Brazil have been dismissed and is not currently facing criminal charges there.  *Estate of Fisher v. C.I.R.*, 905 F.2d 645, 649 (2d Cir. 1990); Doc. 26 at 2.  Mr. Randolph urges this Court to apply a case from the District of New Jersey, *In re Petition of the Republic of Turkey for an Ord. Directing Discovery From Hamit Cicek Pursuant to 28 U.S.C. § 1782*, to quash the subpoenas at issue.  2020 WL 4035499 (D.N.J. July 17, 2020).  However, this Court finds this case is not on point.  As Respondent admits, there, the petitioner sought to compel production from the movant who had already been criminally charged in Turkey and fled to the United States after obtaining asylum.  Doc. 15 at 17 citing *Id*. at 1-2.  Here, Mr. Randolph is not an asylee nor is he currently facing criminal charges in either England or Brazil. While Mr. Randolph argues American, English, and Brazilian law share important protections against self-crimination, he has insufficiently explained or articulated to this Court specifically

what he is asserting his Fifth Amendment privilege over.  Mr. Randolph asks this Court to quash Claimant's subpoenas in their entirety on this basis.  Such a sweeping privilege against discovery at this juncture is simply unreasonable and impermissible.  This does not prohibit Mr. Randolph from invoking his Fifth Amendment right with regard to *specific* documents or *specific* questions at a later stage once the scope of discovery has been modified and determined.  *Pence*, 323 F.R.D. at 187.  Beyond his blanket assertion of privilege, Mr. Randolph's fears of criminal prosecution are based on mere speculation.  He has not demonstrated to this Court how his fears of prosecution are reasonable or how his answers will be incriminatory.

In addition to the Fifth Amendment right against self-incrimination, Mr. Randolph outlines that the United Kingdom also shares recognition of this right.  Doc. 15 at 14.  Respondent states in Section 14(1) of the United Kingdom's Civil Evidence Act of 1968 and Article 6 of the European Convention of Human Rights, the right against self-incrimination exists regarding any information or documents that may increase the risk of prosecution.  *Id*. citing Ex. 3 at ¶¶ 8-9.  Mr. Randolph states that in the United Kingdom, an individual may refuse to provide evidence if, "(1) production may increase the risk of prosecution, or (2) prosecutors may wish to rely on the material produced in establishing guilt or in determining whether to prosecute."  Doc. 15 at 14 citing, *Id*. If an individual faces a serious threat of foreign criminal prosecution, English courts may reject efforts to compel testimony.  *Id*. citing Ex. 3 at ¶¶ 16-17.

Despite the English protections against self-incrimination, Mr. Randolph has not established beyond speculation that English courts would reject the discovery sought.  Under § 1782, "courts have concluded that the statute's protection extends to privileges recognized by foreign law, but consonant with courts' reticence to delve into complex question of foreign law, parties are generally required to provide clear and authoritative proof that a foreign tribunal would

reject evidence pursuant to a foreign privilege." *In re Veiga*, 746 F. Supp. 2d 8, 6 (D.D.C. 2010) citing, *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378–79 (5th Cir.2010).  Here, Mr. Randolph has not offered clear and authoritative proof that English courts would reject the requested evidence.  *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir.1995).[1] English courts have routinely admitted § 1782 evidence, and Mr. Randolph has not demonstrated otherwise.  Rather, the English House of Lords has held that Section 1782(a) discovery is permissible evidence and does not violate due process.  *South Carolina Ins. Co. N.V.*, 3 W.L.R. 398 at 36, 44.  Respondent has not offered clear and authoritative proof or a declaration by English courts that evidence via Section 1782(a) is impermissible, and even if he did, this Court has not found foreign precedent that is on point and sufficiently analogous to warrant the denial of discovery.  *Euromepa S.A.*, 51 F.3d at 1100.

Mr. Randolph next argues that under Brazilian law, there is an absolute privilege against self-incrimination.  Doc. 15 at 15.  Respondent states that under the Castilho Declaration, "Brazilian law is clear and unequivocal…[that] no person may be forced to testify in a manner inconsistent with their right against self-incrimination." *Id*. citing, Castilho Decl., Ex. 1 at ¶ 27. In addition to constitutional safeguards, Respondent asserts the Brazilian right against self-incrimination has been construed to apply to anyone who is or may be subject to a criminal proceeding.  Doc. 15 at 15 citing, Ex. 1 at ¶ 28.  This right against self-incrimination includes the refusal of inculpatory documents.  *Id*.  Mr. Randolph states that Brazil is currently pursuing criminal charges against him and therefore, it would be unduly burdensome to compel Respondent

---

[1] The Second Circuit has referred to *South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, 3 W.L.R. 398 (Eng.1986) to demonstrate the type of clear and authoritative proof required.  *Euromepa S.A*, 51 F.3d at 1100.  There, "a party to a British litigation sought third-party discovery under section 1782 in the United States District Court for the District of Washington. Pre-trial discovery of this sort was not permitted under English procedures and the trial judge enjoined it on the grounds that "the English court should retain control of its own procedure and the proceedings that are before it." *Id*. at 403." *Id*.

to submit to a deposition and produce documents.  Doc. 15 at 15-16.  This Court disagrees.

Contrary to what Mr. Randolph has stated, while the criminal charges he faced in Brazil have since

been dismissed, he is not currently under indictment there.  Franco Decl. at ¶¶ 16-22, 23; Doc. 26

at 2.  Mr. Randolph is incorrect that he is currently under criminal indictment in Brazil, and his

assertion that further discovery could result in future criminal indictments is entirely speculative.

Even if Brazilian law were applied to the subpoena requests at issue, the Brazilian privilege against

self-incrimination is not absolute.  Doc. 18, Ex. 1, at ¶¶ 26-27.  Under Brazilian law, Claimants

"acknowledge that Mr. Randolph may exercise his right to remain silent in Brazil regarding

questions whose answers in civil proceedings may result in self-incrimination.  However, in

accordance with the established understanding of the Supreme Federal Court, the right to remain

silent in order to not self-incriminate, "does not mean, however, that absolute silence is endorsed

before the Parliamentary Commission of Investigation regarding matters in which there is a duty

to testify as a witness."" *Id*. citing, Habeas Corpus nº 230.646, Reporting Justice André Mendonça,

monocratic decision rendered on July 28th, 2023 – Free translation.  *See also Id*. at ¶¶ 28-29, which

underscore the limits of the Brazilian right against self-incrimination.  Apart from argument,

Respondent has not provided case law or cited statutes to support his position that the Brazilian

right against self-incrimination is absolute.  Nor has Respondent provided evidence that he is

currently under criminal indictment in Brazil or has a reasonable fear of prosecution there.

Therefore, this Court finds the subpoenas at issue do not undermine Mr. Randolph's privilege

against self-incrimination under Brazilian law, even if Brazilian law governed Claimants'

subpoenas and the litigation process in this civil case.

Apart from his assertion of privilege, Mr. Randolph next argues that Claimants' subpoenas

should be quashed pursuant to Fed.R.Civ.P. 45(d)(3) because they are overly broad and unduly

burdensome.  Doc. 15 at 19.  Specifically, Mr. Randolph asserts that the document requests are overly broad because Claimants demand information and documents from events that occurred over ten years ago.  *Id*.  Mr. Randolph has not been employed by BHP for more than a decade and returned any and all documents to his employer when his employment concluded.  *Id*.  Claimants' requests for pay stubs and contracts have no material link to the English Defendants and would therefore, be unduly burdensome.  *Id*.

Pursuant to Fed.R.Civ.P 45(d)(3)(iv), a court may quash a subpoena that is unduly burdensome.  Upon review, this Court first finds the information sought by Claimants is relevant. In Claimants' request for production, they ask for the following from January 1, 2007, to 2013:

1. All documents concerning pay slips, W-2s, W-9s, 1099s, and other forms of compensation between and among You and Samarco;

 2. All documents concerning employment contracts or agreements between You and Samarco;

3. All communications between and among You and any Samarco employee, executive, Samarco Board member, or agent of Samarco concerning BHP's relationship with Samarco, including but not limited to, BHP's supervision, management, and control over Samarco;

4. All communications between or among You and any Samarco employee, executive, Samarco Board member, and/or agent of Samarco concerning your role and responsibilities in Samarco management, operations, or daily affairs.

Doc. 1 at 8.  As it relates to relevance, under Rule 26(b)(1), this Court finds Claimants' discovery requests are relevant to its claims.  Claimants state that they seek to prove that "(i) the substance of the matters which gave rise to concerns in request of the Dam's stability were raised at the meetings of the Samarco Board and were communicated to the GMC, if not also the BHP Boards of Directors, and (ii) that significant matters approved by the Samarco Board, such as the approval of expenditures incurred in connection with increased production, were known to and in fact were approved by the GMC, if not also the BHP Boards of Directors."  *Id*. at 11.  Furthermore,

"deposing Mr. Randolph on these topics will provide Applicants with clarity on how the GMC operated with respect to Samarco; what was discussed at particular Samarco Board meetings; what was reported to BHP following Samarco Board meetings; whether both BHP and Samarco were aware of risks associated with the Fundao Dam, including the Setback; and whether BHP, through its GMC or otherwise, asserted control over Samarco in relation to decisions made in face of those risks." *Id*.

Mr. Randolph asserts in addition to the lack of temporal proximity, many of the documents sought are already in the English Defendants' possession and to the extent they are not, documents such as Mr. Randolph's pay stubs and employment contracts are irrelevant and do not have a material link to the English Defendants. Doc. 15 at 21-22. This Court disagrees and finds that the documents sought by Claimants are relevant. Documents such as pay slips, W-2s, 1099s, employment contracts, and communications between Mr. Randolph as they relate to Samarco and BHP are relevant in adjudicating Claimants' allegations. Mr. Randolph was purportedly heavily involved with both BHP and Samarco as Chief Executive of BHP's Ferrous and Coal Customer Sector Group and a member of the GMC, the most senior executive body at BHP, during the time leading up to the collapse of the Fundao Dam. Doc. 1-1 at 8. The documents Claimants seek would assist in understanding not only Mr. Randolph's role with BHP and Samarco, but also communications that took place as they relate to the collapse of the Fundao Dam. Even if the documents and testimony Claimants seek were not relevant on their face, this Court finds Claimants have met the burden of establishing their relevance. *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586–87 (D. Kan. 2008). Alternatively, this Court is further convinced of the

relevance of these documents and deposition testimony based on previous case law outside of this circuit.[2]

Because the information sought is relevant, Mr. Randolph bears the burden of demonstrating with sufficient detail or "a compelling showing that the subpoena requests are unduly burdensome." *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, No. 17-CV-00803-CMA-NYW, 2017 WL 4278494 at *5 (D. Colo. Sept. 27, 2017) citing, *Int'l Bhd. Of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11–cv–02007–MSK–KLM, 2012 WL 1801979, at *7 (D. Colo. May 16, 2012); *Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11–cv–01611–MSK–CBS, 2014 WL 1257762, at *6 (D. Colo. Mar. 27, 2014). Since he is asserting that disclosure would subject him to undue burden, he must establish that disclosure will cause a "clearly defined and serious injury." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014) citing, *City of St. Petersburg v. Total Containment, Inc.*, Case No. 06–cv–20953, 2008 WL 1995298, at *2 (E.D.Pa. May 5, 2008), *In re Mushroom Direct Purchaser Antitrust Litig.*, Case No. 06–cv–0620, 2012 WL 298480, at *5 (E.D.Pa. Jan. 31, 2012).

This Court finds Mr. Randolph has not demonstrated that deposition testimony and document production would be unduly burdensome. This Court does not find that Claimants' subpoena requests are either irrelevant or overly broad, which would be grounds for quashing the subpoenas in question. *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, No. 17-CV-00803-CMA-NYW, 2017 WL 4278494, *5 (D. Colo. Sept. 27, 2017) citing, *E.E.O.C. v. Unit Drilling Co.*, No. 13–cv–147–TCK–PJC, 2014 WL 130551, at *3–4 (N.D. Okla. Jan. 13, 2014).

---

[2] In securities proceedings related to whether BHP or Vale failed to disclose information, other courts have previously permitted subpoenas against Mr. Randolph and document production related to BHP and Samarco. *In re BHP Billiton Ltd.* Sec. Litig., 276 F. Supp. 3d 65 (S.D.N.Y. 2017).

Claimants subpoena requests pertain to their three causes of action as they relate to Mr. Randolph's employment with BHP and Samarco and the collapse of the Fundao Dam.  Doc. 1-1 at 8-12. Furthermore, Claimants' subpoena requests are limited to a specific time period relevant and probative of Mr. Randolph's connections, if any, to BHP, Samarco, and the Fundao Dam disaster. *Id*.  Claimants are not asking for a blanket document request from Mr. Randolph without any sort of temporal parameters, which if the case, would be grounds for quashing a subpoena.  *See Richards v. Convergys Corp.*, Nos. 2:05–cv–00790–DAK, 2:05–cv–00812 DAK, 2007 WL 474012, at *4–5 (D. Utah Feb. 7, 2007); *White v. Deere & Co.*, No. 13–cv–02173–PAB–NYW, 2015 WL 1385210, at *9 (D. Colo. Mar. 23, 2015).  Respondent argues at several points that the subpoena requests are overly broad because they date to events that occurred over ten years ago and would require searches of personal devices.  However, such a passage of time and Claimants' tailored requests are not unduly burdensome.  (*See e.g.*, *In re Apotex Inc.*, No. M12-160, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (finding onerous a request requiring a non-party to search volumes of documents and unwieldy databases, some going back roughly thirty years)*; In re Degitechnic*, No. C07-414-JCC, 2007 WL 1367697, at *2 (W.D. Wash. May 8, 2007) (finding a production request unjustified and unduly burdensome where the target of the request complained that the search would involve hundreds of thousands, if not millions, of pages, would take three months to complete, and would cost hundreds of thousands of dollars); *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1341 (D. Colo. 2015).  Furthermore, the burdensomeness of the subpoena requests as to the passage of time and rifling through devices is further mitigated by other discovery requests involving BHP, Samarco, and Mr. Randolph related to the Fundao disaster.

"When the burdensomeness of a subpoena is at issue, the onus is on the party who alleges the burden to establish the burden with specificity." *Charles Schwab*, 2017 WL 4278494 at 6

citing, *Biological Processors of Alabama, Inc. v. North Georgia Envtl. Servs., Inc.*, 2009 WL 1663102, at \*1 (E.D. La. Jun. 11, 2009).  "[T]he party claiming undue burden as a basis for a motion to quash is held to a high burden of proof which requires the party to demonstrate the actual manner and extent of the burden and the injurious consequences of insisting compliance with the subpoena." (internal quotation marks and citation omitted).  *Id*. citing, *Ohio Valley Envtl. Coal., Inc. v. United States Army Corps of Eng'rs*, No. 1:11MC35, 2012 WL 112325, at \*2 (N.D.W. Va. Jan. 12, 2012).  While Mr. Randolph argues he has a "clearly defined and serious injury" if subject to the subpoenas because compliance would violate his Fifth Amendment right against self-incrimination, this Court disagrees.  As this Court previously stated, while Mr. Randolph cannot assert a blanket, Fifth Amendment privilege, he can, where appropriate, exercise this privilege with regard to specific documents or specific questions.  *Pence*, 323 F.R.D. at 187.  The criminal charges against Mr. Randolph in Brazil have since been dismissed, and he is currently not under indictment there – any claims of future charges on his part are speculative.  Respondent has not demonstrated to this Court the injurious consequences of compliance with the subpoenas at issue.  Mr. Randolph has not demonstrated to this Court, with *specificity*, the burdensomeness of the subpoenas at issue.

However, Courts may quash a subpoena if "discovery sought is unreasonably cumulative or duplicative." *Charles Schwab*, 2017 WL 4278494 at 6 citing, *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 12–cv–7493, 2012 WL 6568226, at \*2–3 (N.D. Ill. Dec. 14, 2012).  To the extent that Claimants seek duplicative or cumulative information from Mr. Randolph, this Court agrees that Mr. Randolph need not provide such information.  *Id*.

## II.     The Remaining *Intel* Factors Favor Granting Claimants' Subpoenas

Mr. Randolph next claims the remaining *Intel* factors weigh in favor of quashing Claimants' subpoenas.  Specifically, Respondent argues the information Claimants seek can be obtained through other means, are within the foreign tribunal's jurisdictional reach, and conceal attempts to circumvent foreign proof-gathering restrictions.  Doc. 15 at 24.  This Court disagrees and finds that the remaining *Intel* factors weigh in favor of granting Claimants' subpoenas.

As to the first factor, "whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach," this Court finds this first factor weighs in favor of Claimants' subpoenas.  *In re Ex Parte Application Under 28 U.S.C. § 1782 to Take Discovery from Americo Fialdini Junior*, No. 21-MC-0007-WJM-NYW, 2021 WL 253455 * 2 citing, *Intel*, 542 U.S. at 260.  Mr. Randolph states this first factor weighs in favor of quashing the subpoenas.  As this Court previously stated, "Mr. Randolph is no longer employed with Defendants, will not be a party to the pending English litigation, and is located outside of the English Court's reach given his New Mexico residency.  Therefore…Mr. Randolph's testimony and other evidence he may have is essential to the pending case before the English High Court of Justice, and…is outside of their jurisdictional reach."  Doc. 2 at 7.  Mr. Randolph argues he is not a party to the English litigation, and Claimants can and should seek discovery materials from BHP instead.  Doc. 15 at 23.  However, Claimants assert Mr. Randolph has relevant, undiscovered documents in his possession related to the English litigation in addition to important deposition testimony that it cannot obtain from BHP.

It is clearly within this Court's discretion to grant discovery requests without a party exhausting discovery through other means.  *In re: Application of Bracha Found.*, 663 F. App'x 755, 764-65 (11th Cir. 2016).  § 1782 discovery is even more likely justified in instances where a person from whom discovery is sought is a nonparty to litigation.  *Id*. citing, *Intel*, 542 U.S. at 264.

16

Furthermore, it is contrary to precedent to argue that discovery must be withheld from a party on the basis that discovery was not sought or conducted against another party. *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1338 (D. Colo. 2015); *Salt Mobile S.A. v. Liberty Glob. Inc.*, No. 20-MC-00153-CMA, 2021 WL 2375864, at *4 (D. Colo. June 10, 2021). As such, this Court finds the documents and deposition testimony sought by Claimants is not within the foreign tribunal's jurisdictional reach and therefore, the first factor weighs against quashing Claimants' subpoenas.

Regarding the second and third factors, "the nature of the foreign tribunal and character of the proceedings underway abroad [and] the receptivity of the foreign government or the court or agency abroad to federal court assistance," this Court finds these factors weigh against quashing the subpoenas. As this Court discussed in its order granting Claimants' subpoena requests, these factors weigh in favor of discovery and therefore, against quashing the subpoenas in question. Doc. 2 at 7. "There is no "authoritative proof" that the English Court of High Justice would reject discovery assistance through § 1782. *In re Polygon Glob. Partners LLP*, No. 21-mc-364 (ER), 2021 WL 2117397, at *8 (S.D.N.Y. May 25, 2021) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *In re Ex Parte Application of Porsche*, 2016 WL 702327, at *8 (internal citations omitted) ("The law on this factor is clear: District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals that they would reject Section 1782 assistance"). Applicants' counsel attests that "English courts are receptive to § 1782 discovery" and in the instances that English Courts have rejected such evidence, it was in cases where the proposed deposed witness is a party to litigation. Ex. 2 at 9 citing, *Omega Group Holdings Ltd. v. Kozeny*, [2002] C.L.C. 132, 135 (Q.B. 2001) (Eng.). Here, Applicants assert Mr. Randolph is not and will not be a party to the pending English litigation and therefore, discovery is proper under § 1782." Doc. 2 at 7-8. Mr. Randolph does not specifically argue that the second

17

and third *Intel* factors weigh in his favor.  Therefore, this Court finds these two factors weigh against quashing the subpoenas at issue.

Regarding the fourth factor, "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country," as this Court previously held, this weighs against quashing the subpoenas.  In its first order, this Court stated, "Applicants' solicitor-advocate has sworn that Mr. Randolph has been previously subpoenaed for deposition testimony and documents in *In re BHP Billiton Limited Securities Litigation*, No. 16-cv-01445 (S.D.N.Y., filed Feb. 23, 2016).  Ainsworth Decl. at ¶28.  Furthermore, Applicants' solicitor-advocate also declared, "[t]he application does not, in any way, attempt to circumvent limitations on disclosure or discovery in the English Litigation.  English case law clearly allows mechanisms for a party to obtain evidence believed necessary to support their case provided such means are lawful in the country in which they are used and do not interfere with the courts' control of their own processes."  *Id.* at ¶31.  *See also In re Bayerische Motoren Werke AG*, No. MC-22-00016-PHX-SPL, 2022 WL 1092804, * 2 (D. Ariz. Apr. 12, 2022) ("The Court has no reason to believe that Applicant is [attempting to circumvent foreign proof-gathering restrictions].  Applicant has submitted a Declaration from a German attorney that no law or rule in the…[a]ction prevents a party from seeking and using § 1782 discovery.  *See In re Varian*, 2016 WL 1161568, at *5"); *SC Ins. Co. v. Assurantie Maatschappij* (1986), 195 N.R. 295 (HL) ("[§ 1782 does not] depart from, or interfere with, the procedure of the English court"); *In re IKB Deutsche Industriebank AG, 2010 WL 1526070*, at *4 (N.D. Ill. Apr. 8, 2010).  Therefore, this Court finds Applicants' request does not seek to circumvent English proof-gathering restrictions."  Doc. 2 at 8.  Claimants argue that Respondent's own evidence states that under English law, there is not an automatic privilege against self-incrimination as to foreign criminal liability, but rather English courts can weigh the

risks of foreign self-incrimination when determining whether to exclude or admit evidence.  Doc. 18 at 10-11 citing, Moi Decl. at ¶ 16.  Under Brazilian law, Mr. Randolph's privilege against self-incrimination would not protect him against non-incriminating evidence as a non-party witness. *Id*. citing Franco Decl. at ¶¶ 25-26.  Mr. Randolph argues that enforcing the subpoenas would result in the circumvention of safeguards to protect his right against self-incrimination.  Doc. 15 at 3.  As this Court previously explained, Mr. Randolph is entitled to assert his privilege against self-incrimination, and English courts condone the use of §1782 in obtaining foreign discovery. Doc. 18 at 11 citing *S. Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, [1987] 1 App. Cas. 24, Appx. at 192.  Mr. Randolph's argument as to the circumvention of protections against self-incrimination is circular, as it relies heavily on his argument that Claimants' subpoena requests are unduly burdensome, which this Court previously addressed.  *See supra* at 5-15.  Therefore, this Court finds this factor weighs against quashing the subpoenas.

Having weighed the remaining *Intel* factors, this Court rejects Respondent's assertion that these factors weigh in favor of quashing the subpoenas at issue.  Therefore, this Court denies Mr. Randolph's Motion to Quash.

### III.    Protections to Mitigate Respondent's Self-Incrimination Concerns

Mr. Randolph argues should this Court deny his Motion, it should order Claimants to substantially narrow their discovery requests, which currently seek privileged information, are duplicative, and unduly burdensome.  Doc. 15 at 25.  Specifically, Respondent asks this Court to order "(1) a consent order…providing for adequate safeguards; (2) a provision that only certain specified lawyers would have access to the deposition transcript and other documents produced, including secondary documents that refer to the consent of that discovery; (3) a formal undertaking by each specified lawyer that he or she will comply with the safeguards; (4) a prohibition on the

parties to reproduce or transmit the contents of the documents except in compliance with the orders; (5) a requirement that Claimants seek Mr. Randolph's agreement to use the discovered materials; and (6) other procedural safeguards including the requirement that all documents pertaining to this information filed in court be filed under seal and adjudicated in camera."  Doc. 15 at 25-26.

Given Mr. Randolph's concerns, Claimants propose several safeguards regarding discovery. Specifically, Claimants propose:

- "[A]n undertaking by Pogust Goodhead that any deposition transcript/recording and documents produced, including any secondary documents that might refer to any of the content thereof obtained from Mr. Randolph (the "Evidence"), will not be used for any purpose other than for use in the furtherance of this § 1782 application for discovery and to seek to admit such Evidence in the English Litigation;"
- "[A] provision that the Evidence will only be viewed by Mr. Randolph, his counsel, and specific lawyers within Pogust Goodhead who are engaged in this § 1782 application for discovery and the English Litigation, including the team of barristers that Pogust Goodhead instructs for the purpose of the English Litigation and any experts or vendors retained by the litigation team in pursuit of the English Litigation;"
- "[A]n undertaking that if Pogust Goodhead wishes to use any of the Evidence in the English Litigation, they will notify Mr. Randolph's counsel and if Randolph's counsel advises that the Evidence should remain confidential on the basis of a risk of self-incrimination, Pogust Goodhead will apply to the English Court for a confidentiality order requiring that the Evidence remains subject to a confidentiality ring (where it can be viewed by legal counsel only and where any reference to the Evidence filed with the Court contain appropriate redactions)."

Doc. 18 at 21-22 citing Daly Decl. at ¶ 15.

As this Court previously stated, while Mr. Randolph cannot assert a blanket privilege against self-incrimination rooted in speculation, he is permitted to assert this privilege as to *specific* production requests and deposition questions from Claimants.  Furthermore, to the extent that Claimants' production requests are duplicative of discovery materials already in their possession, Mr. Randolph need not provide such information.

As to Claimants' proposed safeguards, given this Court has found Claimants' discovery requests are relevant and sufficiently narrow in time and scope to justify the production burden, these proposed safeguards may lessen the burden on Mr. Randolph.  *See Salt Mobile S.A. v. Liberty Glob. Inc.*, No. 20-MC-00153-CMA, 2021 WL 2375864 (D. Colo. June 10, 2021)*; In re Broadsheet LLC*, No. 11-CV-02436-PAB-KMT, 2011 WL 4949864 * 3 (D. Colo. Oct. 18, 2011); *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016).  However, the Court declines to order further safeguards at this stage, with the scope of any limits to be the subject of future motions and determined by United States Magistrate Judge Jennifer Rozzoni.

To the extent Mr. Randolph disagrees or may wish to further modify the subpoena requirements, these can also be the subject of future motions.  *In re Laggner*, No. CV 23-MC-00074-NYW, 2024 WL 1090049 at *2 (D. Colo. Feb. 2, 2024) citing, *In re Perez Pallares*, No. 10-CV-02528-PAB, 2010 WL 4193072 at *2 (D. Colo. Oct. 20, 2010); *Intel*, 542 U.S. at 265.

## CONCLUSION

For the reasons stated above, the Court denies Respondent's Motion to Quash (Doc. 15).

**IT IS THEREFORE ORDERED** that Respondent's Motion to Quash (Doc. 15) is hereby **DENIED**.

**IT IS FINALLY ORDERED** that Claimants modify their subpoena requests, as appropriate, to conform with this order.

_____/s/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE